## CHEATHAM *v.* PEARCE & RYAN.

### (*Nashville.* February 17, 1891.)

1. ABATEMENT, PLEA IN. *Verification of by solicitor sufficient.*

Plea in abatement is sufficiently verified by the affidavit of a solicitor in the cause stating that he is "agent and attorney" for the defendant, "and that he is acquainted with the facts set out in said plea, and that they are true in substance and in fact." (*Post, pp. 676–678.*)

Cases cited and approved: Bank *v.* Jones, 1 Swan, 391; Carter *v.* Vaulx, 2 Swan, 641; Bank *v.* Anderson, 3 Sneed, 672; Carlisle v. Cowan, 85 Tenn., 170; Klepper *v.* Powell, 6 Heis., 508; Wrompelmeir *v.* Moses, 3 Bax., 470; Trabue *v.* Higden, 4 Cold., 622, 623; Seifred *v.* Bank, 2 Tenn. Ch., 18.

2. SAME. *Amendment of verification allowable.*

Verification of plea in abatement may, by leave of Court, be amended by filing an additional affidavit. (*Post, p. 681.*)

Cases cited and approved: Wrompelmeir *v.* Moses, 3 Bax., 471; Trabue *v.* Higden, 4 Cold., 624; Seifred *v.* Bank, 2 Tenn. Ch., 19.

3. SAME. *Verification of before Notary in another State sufficient.*

Verification of plea in abatement may be made by affidavit before a Notary Public in and for another State. (*Post, p. 681.*)

Case cited and approved: Carlisle *v.* Cowan, 85 Tenn., 170.

4. SAME. *Verification of by one member of firm sufficient.*

Plea in abatement by a firm is sufficiently verified by an affidavit on behalf of the firm which is subscribed and sworn to by one member of the firm. (*Post, pp. 677, 678.*)

Case cited and approved: Moody *v.* Alter, 12 Heis., 142.

5. CHANCERY PLEADING AND PRACTICE. *Plea in abatement construed as a negative plea.*

Plea in abatement in an attachment case denying the truth of the causes for the attachment averred in the bill is nothing more than a negative

plea, although it contains an affirmative statement of the facts relied upon to support the denial. (*Post, pp. 674, 675.*)

6. SAME. *Answer accompanying plea in abatement.*

Plea in abatement to an original attachment bill should not be accompanied by an answer in support of it, where the bill charges, as ground for the attachment, a single fraudulent disposition of property, without averring any matters of evidence in support of the charge of fraud, and the plea simply denies the fraud, thereby covering the entire bill "so far as the same makes any charges or seeks any relief" against the particular defendant filing the plea. The answer, in such case, would overrule the plea. (*Post, pp. 678–680, 686.*)

Cases cited and approved: Seifred *v.* Bank, 1 Bax., 203, 204; Graham *v.* Nelson, 5 Hum., 610; Pigue *v.* Young, 85 Tenn., 266.

7. SAME. *Same.*

Where complainant waives defendant's oath to answer, it is not incumbent upon the defendant to support his plea by an answer, even in a case where it would otherwise be required. (*Post, p. 679.*)

8. SAME. *Extension of time to take proof. Chancellor may impose terms.*

Where, after the time allowed by law for taking testimony has expired, and the cause has been regularly reached for trial upon call of the docket, the Chancellor grants an extension of time for the taking of further evidence, it is an act of grace and favor to the party obtaining the extension, and he cannot complain of any terms that may be imposed. The Chancellor may require him to take depositions of witnesses resident in county on two days' notice, and of non-resident witnesses, by interrogatories, upon one day's notice. (*Post, pp. 684, 685.*)

9. SAME. *No decree for debt not due, where original attachment fails.*

In suit, by original attachment, for debt not due, no decree will be given for the debt, when the attachment is defeated by plea in abatement, and the prematurity of the suit for the debt is interposed as a defense by answer. (*Post, p. 687.*)

Case cited and approved: Pigue *v.* Young, 85 Tenn., 268.

10. SAME. *Replication to pleas.*

Replication to plea in abatement is proper, under the practice of the Chancery Courts of this State, even where the plea is purely negative. Replications are abolished only as to answers. (*Post, pp. 692–696.*)

Code construed: §§ 5065, 5136, 5177 (M. & V.); §§ 4322, 4393, 4432 (T. & S.).

Cases cited and approved: Klepper *v.* Powell, 6 Heis., 506, 507; Trabue *v.* Higden, 4 Cold., 622; Lea *v.* Vanbiber, 6 Hum., 19.

11. SAME. *Trial by jury. Demand for, when made.*

The demand for a jury to try issues of fact in a Chancery Court may be made, in the absence of any rule of Court regulating that matter, at any time before the cause is heard by the Chancellor. (*Post, p. 688.*)

Cases cited and approved: Allen *v.* Saulpaw, 6 Lea, 481; Duncan *v.* King, 1 Tenn., 79; London *v.* London, 1 Hum., 4; Lowe *v.* Traynor, 6 Cold., 635; Morris *v.* Swaney, 7 Heis., 592; Mills *v.* Farris, 12 Heis., 451; Johnson *v.* Warden, 1 Leg. R., 26; Pearce *v.* Suggs & Pettit, 85 Tenn., 728; Cooper & Stockell *v.* Stockard, 16 Lea, 145.

12. SAME. *Same. Same.*

The recent statutes regulating time and manner of demanding jury trial have no application to the Chancery Courts. (*Post, pp. 688–691.*)

Acts construed: Acts 1875, Ch. 4 (§§ 3602–3605 (M. & V.) Code); Acts 1889, Ch. 220.

Cases cited and approved: Allen *v.* Saulpaw, 6 Lea, 481; Cooper & Stockell *v.* Stockard, 16 Lea, 145.

13. SAME. *Same. Chancellor may prescribe reasonable rules regulating demand, etc.*

Chancellors possess inherent power to make reasonable rules with reference to demanding of jury trials and presenting issues therefor in the Chancery Courts. (*Post, p. 691.*)

Cases cited and approved: Stadler *v.* Hertz, 13 Lea, 318, 319; Denton *v.* Woods, 86 Tenn., 37; Wood *v.* Frazier, 86 Tenn., 509.

14. SAME. *Same. Same.*

And a rule is reasonable which requires "that applications for a jury must be made within the first three days of the trial term." (*Post, pp. 691, 692.*)

Case cited and approved: Stadler *v.* Hertz, 13 Lea, 318, 319.

15. SAME. *Same. Same.*

The demand for jury under this rule must be made in open Court, and

Cheatham *v.* Pearce & Ryan.

within the first three days of the term.   Demand in a replication on file during the first three days of the term is insufficient.   (*Post, p. 696.*)

(See Code, § 5216 (M. & V.)

16. SAME.   *Same.   Same.*

A rule of Court that requires "the issues of fact in all cases triable by jury" at a particular term to be presented and filed on or before a specified day, and that "each issue submitted shall embrace only one question of fact," is held proper and reasonable.   (*Post, p. 682.*)

17. ASSIGNMENTS OF ERROR.   *Must show error in action of lower Court.*

Assignments of error must show upon their face that, *prima facie*, the action of the lower Court was erroneous, or state some reason why it is claimed that its action was erroneous.   (*Post, pp. 686–688.*)

Cases cited and approved: Wood *v.* Frazier, 86 Tenn., 501–503 ; Denton *v.* Woods, 86 Tenn., 37.

(See Bleidorn *v.* Pilot Mountain Coal & Mining Co., *ante, pp.* 206, 207.)

18. SAME.   *Variance.*

There was motion in Chancery Court to strike out plea in abatement "filed for Pearce & Ryan because not *signed* by Defendant *Ryan.*" This motion was disallowed.   There was assignment of error in this Court that "the Chancellor erred in not striking out the plea in abatement of the firm because it was not signed by the *firm,* Pearce & Ryan, and *sworn to* by Ryan, a member of the firm, but only by Pearce."

*Held:* The assignment is bad.   The Chancellor will not be put in error for not granting a motion that was never made.   (*Post, pp.* 677, 678.)

---

FROM   DAVIDSON.

---

Appeal from Chancery Court of Davidson County. ANDREW ALLISON, Ch.

EAST & FOGG and ED I. GOLLIDAY for Cheatham.

TILLMAN & TILLMAN for Trustee.

DICKINSON & FRAZER for Pearce & Ryan.

ED BAXTER, Sp. J.    On July 22, 1889, F. R. Cheatham filed a bill in the Chancery Court at Nashville against C. S. Pearce and Thomas Ryan, partners under the firm name of Pearce & Ryan, and also against C. B. Pearce and C. D. Pearce.

Complainant charged that he was the holder of five promissory notes, aggregating $4,448.40, executed by Pearce & Ryan; but none of them were due when the bill was filed.

Complainant further charged that the firm of Pearce & Ryan pretended to sell out their stock of goods and property to C. B. Pearce and C. D. Pearce for about $43,000; that C. B. and C. D. Pearce lived in Kentucky, and were, respectively, the father and brother of the C. S. Pearce who was a member of said firm; that no record of said sale was made; that the terms of the sale were not given out in any way; and that no explanation had been made as to how the $43,000 had been paid.

Complainant charged that said sale was a false and fraudulent disposition of the property pretended to be sold, and that it was intended to cheat, hinder, and delay the creditors of said firm.

Complainant charged that said firm, and said

C. B. and C. D. Pearce, were in consultation over the matter before executing said device, and each of them knew that said firm was insolvent, and could not meet its liabilities.

Complainant charged that if the $43,000 was paid in cash, said firm had it in their possession, and it was liable for the payment of complainant's debts; that if said firm did not have said money in their possession, they had made a false and fraudulent disposition of it; and that if said money had never been paid to said firm, all the property and effects pretended to be sold should be subjected to complainant's debts.

Complainant charged that the property sold was worth $10,000 or $15,000 more than the $43,000 pretended to be paid for it.

The bill prayed that defendants be required to answer, but not under oath, which was expressly waived; that C. B. and. C. D. Pearce be enjoined from selling or disposing of any of said property which they had pretended to purchase; that the same, or a sufficiency thereof, be attached; that a receiver be appointed to take charge of said property and sell it; that a judgment be rendered in complainant's favor upon said notes, and for general relief.

Other persons were made defendants, and other matters were stated in the bill; but as it has been dismissed and abandoned as to those persons and matters, they need not be referred to hereafter.

On September 2, 1889, C. S. Pearce and Thomas

43—5 ᴘ

Ryan, composing the firm of Pearce & Ryan, filed a plea in abatement to so much and such parts of the bill as seek to attach their property; and they aver that it is not true that the sale by defendants, Pearce & Ryan, to C. B. and C. D. Pearce, composing the firm of C. D. Pearce & Co., of their stock of goods and fixtures, was a false and fraudulent sale and disposition of their property; or that it was made to cheat, hinder, and delay the creditors of said Pearce & Ryan; or that it was made to cover the property, and prevent the joint creditors of said firm from making their recovery out of the property of said firm; or that the sale was a pretended sale; or that it was a trick, device, and fraud resorted to for any purpose.

The plea denies that the consideration for said sale was not paid to Pearce & Ryan by C. D. Pearce & Co. at the time of their purchase; or that Pearce & Ryan had made a false and fraudulent disposition of said consideration; or that said sale was made with a view to their failure. The plea also denies that said stock of goods was worth more than the price paid to Pearce & Ryan by C. D. Pearce & Co. The plea avers affirmatively that "on July 17, 1889, Pearce & Ryan sold and delivered to C. D. Pearce & Co., in good faith, and at a full and fair price, namely, for the sum of $43,580.23, all of the goods, wares, and merchandise then belonging to them situated in their store-house on Market Street, Nashville, Tennessee, and including also certificates or warehouse

receipts for 500 barrels of whisky in the warehouse of Charles Nelson, and that on the same day the purchasers paid to them $43,410.17 of said money by their check, which was afterward, and within two days thereafter, paid to said Pearce & Ryan, and that within a short time thereafter the said purchasers paid the balance of $170.06 to said Pearce & Ryan; and that upon the day of said sale, to wit, July 17, 1889, all of said property so sold by them was delivered to C. D. Pearce & Co., and that said C. D. Pearce & Co. took possession of them," etc. The plea was sworn to by C. S. Pearce alone. We construe the plea as amounting, in substance, to nothing more than a negative plea, denying that the sale was fraudulent, the affirmative averments contained in the plea being a mere statement of the facts upon which the defendants rely to support the denial.

On the same day Pearce & Ryan filed their answer "to so much of the bill of complaint" as is not covered by their plea filed thereto. On the same day C. B. and C. D. Pearce filed a plea in abatement "to the said bill so far as the same makes any charges or seeks any relief against them." This plea contains substantially the same matters of denial, and the same affirmative matters as are averred in the plea of Pearce & Ryan; and in addition thereto it avers that after the property was delivered to C. B. and C. D. Pearce, they held possession of the same until a portion of it was levied on by the attachment in this cause.

We place the same construction upon this plea that we have placed upon the plea of Pearce & Ryan. This plea was sworn to on September 2, 1889, by J. M. Dickinson, the affidavit being in the following form: "Mr. Dickinson makes oath that he is agent and attorney for C. B. Pearce and C. D. Pearce, defendants in the foregoing plea, and that he is acquainted with the facts set out in said plea, and that they are true in substance and in fact." This plea was not accompanied by an answer.

On November 15, 1889, complainant moved "to strike from the files the plea purporting to be a plea in abatement filed for Pearce & Ryan, because not *signed* by Defendant *Ryan*, and because it is insufficient." The Chancellor, on November 18, 1889, refused, and overruled the motion. The complainant excepted.

The fifteenth assignment of error by complainant is that "the Chancellor erred in not striking out the plea in abatement of the firm, because it was not signed by the firm Pearce & Ryan, and sworn to by Ryan, a member of the firm, but only by Pearce." The Chancellor was asked to strike out the plea because it was "not signed by *Defendant Ryan;*" but he was not asked to strike it out "because it was not signed by the firm Pearce & Ryan." It is one thing for the members of a firm to separately sign their individual names, and quite a different thing to sign the firm name. If complainant intended to insist that the plea ought to

have been signed in the firm name, he should have made his motion accordingly; and he cannot put the Chancellor in error for not granting a motion that was never made. Neither did complainant ask the Chancellor to strike out the plea because it was not *sworn* to by Ryan; the motion was to strike out the plea because it was not signed by Ryan.

It has been held that an affidavit on behalf of a firm, which was subscribed and sworn to by one member of the firm, was sufficient. *Moody* v. *Alter*, 12 Heis., 142.

The fifteenth assignment is therefore overruled.

The complainant, on November 15, 1889, moved to strike from the files the plea in abatement of C. B. Pearce and C. D. Pearce, because not sworn to by either one of defendants, but by attorney Dickinson, as agent and attorney, and because it is insufficient in substance and form, and not a proper plea, and is unaccompanied with an answer. The Chancellor, on November 18, 1889, refused, and overruled the motion. The complainant excepted.

The eighth assignment is that "it was erroneous in the Chancellor to permit and allow the plea in abatement filed for C. B. and C. D. Pearce to be sworn to by the solicitor of defendants, and overrule the motion of complainant to strike it out, and compelling complainant to take issue on such a plea, when the gravity of the charge and the nature of the transaction are understood." As we

construe this assignment, it raises two questions. The first question is, Was the plea defective because it was sworn to by no one except Mr. Dickinson, the solicitor for defendants?

It was held in *Bank* v. *Jones*, 1 Swan, 391, that a plea in abatement may be sworn to by an attorney or agent of the defendant, if the facts constituting the foundation of the plea be within his personal knowledge. See also *Carter* v. *Vaulx*, 2 Swan, 641; *Bank* v. *Anderson*, 3 Sneed, 672; *Carlisle* v. *Cowan*, 1 Pickle, 170; *Klepper* v. *Powell*, 6 Heis., 508.

In the case last cited it was said that it was not necessary that the fact of agency should be stated in the affidavit, and that the essential requirement is that the truth of the plea shall be verified by some one who is willing to swear that it is true. Mr. Dickinson swears that the facts in the plea are true "in substance and in fact;" which complies with the rule that the affidavit must be positive in form. *Wrompelmeir* v. *Moses*, 3 Bax., 470; *Trabue* v. *Higden*, 4 Cold., 622, 623; *Bank* v. *Jones*, 1 Swan, 392; *Seifred* v. *Bank*, 2 Tenn. Ch., 18.

He furthermore swears that he is acquainted with the facts. We think that his verification of the plea was sufficient.

The second question raised by the eighth assignment (if a very liberal construction be placed upon it) is, whether the Chancellor erred in disallowing the motion to strike from the files the plea of C.

B. and C. D. Pearce because it "is unaccompanied with an answer."

A plea is said to be "accompanied" by an answer where the bill specially charges fraud, and the plea denying the fraud is supported by an answer which denies the fraud, and also denies the facts charged in the bill as constituting the evidence of the fraud. United States Equity, Rule 32.

In such a case, if the bill calls for an answer under oath, the complainant is entitled to a discovery from the defendant as to the truth of the facts stated in the bill as evidence of the fraud.

A defendant in equity does not give his testimony in his plea, but in his answer; and therefore though the plea, which is a mere mode of defense, denies the fraud, it must be supported by an answer in which the defendant gives his sworn testimony in regard to the facts which the complainant charges will be evidence of the fraud. Tyler's Mitford's Equity Pleading, 331, 335; *Seifred* v. *Bank*, 1 Baxter, 203, 204; *Graham* v. *Nelson*, 5 Hum., 610; *Pigue* v. *Young*, 1 Pickle, 266.

But where, as in this case, the complainant waives the defendant's oath, he thereby manifests his unwillingness to rely upon the defendant's testimony, and therefore the defendant need not support his plea by an answer. 1 Daniel's Chancery Pleading and Practice (3d Am. Ed.), p. 640, note 2.

Where a negative plea is "supported" by an answer, they both necessarily cover the same part of the bill, because the answer furnishes the de-

fendant's testimony in regard to the facts upon which the truth of the plea depends. Tyler's Mitford's Equity Pleading, p. 388.

But a plea is also said to be "accompanied" by an answer when the plea is to one part and the answer is to a different part of the bill. In such a case, if the answer covers any part of the bill covered by the plea, the plea will be overruled. Tyler's Mitford's Equity Pleading, p. 388.

The plea of C. B. and C. D. Pearce is "to the said bill so far as the same makes any charges or seeks any relief against them." It is, so far as they are concerned, a plea to the whole bill; and if they had accompanied the plea with an answer to any part of the bill, their answer would have overruled their plea.

We are of opinion that it was not necessary to "accompany" the plea with an answer, and that the Chancellor did not err in refusing to strike out the plea.

Under the vague and indefinite terms of this assignment, complainant's solicitor might have argued in the Court below that the plea should have been "accompanied" by an answer in "support" of the plea, while in this Court he might have argued that the plea should have been "accompanied" by an answer to some part of the bill supposed to be not covered by the plea. The result might have been that this Court would have reversed the Chancellor upon a point which he had never been called upon to decide. This would be unfair to him.

It is not enough for an assignment to insist that the Chancellor erred in a certain particular. It must either appear from the face of the assignment that, *prima facie*, the action of the Chancellor was erroneous, or some reason must be stated why it is claimed that the action was erroneous. *Wood* v. *Frazier*, 2 Pickle, 501–503.

On November 26, 1889, the Chancellor ordered that said C. D. and C. B. Pearce be permitted to make affidavit in their proper persons to said plea; and it was accordingly sworn to before Notaries Public in Kentucky by C. D. Pearce on November 26, 1889, and by C. B. Pearce on December 2, 1889.

It is objected by complainant in the ninth assignment that this action of the Chancellor was erroneous.

In substance the Chancellor permitted the affidavit to be amended, and that an affidavit to a plea in abatement may be amended by leave of Court was held in *Wrompelmeir* v. *Moses*, 3 Baxter, 471; *Trabue* v. *Higden*, 4 Cold., 624; *Seifred* v. *Bank*, 2 Tenn. Ch., 19. A plea in abatement need not be verified before the Court where the suit is pending. It may be verified before any officer within this State authorized to administer oaths. *Carlisle* v. *Cowan*, 1 Pickle, 170. And where the defendants, as in this case, are non-residents, we see no objection to its being verified before any officer of another State who is authorized by the laws of this State to administer oaths in legal proceedings pending in this State.

We have, however, held that the verification of the plea by Mr. Dickinson was sufficient, and therefore its subsequent verification by C. B. and C. D. Pearce was mere surplusage, and may be ·disregarded.

The ninth assignment is therefore overruled.

On November 27, 1889, complainant filed a replication to the plea of Pearce & Ryan, in which he says that the plea "is untrue and false in all particulars, and asks and demands that a jury be impaneled in accordance with the law and rules of the Chancery Court to try all the issues of fact raised and involved in the pleadings of the cause." On the same day he filed a similar replication to the plea of C. B. and C. D. Pearce.

On April 10, 1889, more than three months before · this suit was commenced, the Chancellor of the Chancery Court at Nashville "made a rule of Court that applications for a jury must be made within the first three days of the trial term."

On April 24, 1890, the Chancellor made another rule of practice that "the issues of fact in all cases triable by jury at this term of the Court, shall be filed on or before the second Monday in May, 1890 (May 12); and each issue submitted shall embrace only one question of fact."

Both of said rules were entered on the minutes of said Court.

The sixteenth assignment is that "the Chancellor erred in making the rule" of April 24, 1890, and also in enforcing it in this case.

Cheatham *v.* Pearce & Ryan.

This assignment does not show upon its face that, *prima facie*, the action of the Chancellor was erroneous; nor does it state any reason why it is claimed that it was error for the Chancellor to make the rule, or to enforce it in this case.

Does complainant intend to insist that the Chancellor has no power to make any rules of practice for his Court, or does he intend to insist that he acted unwisely or oppressively in making this particular rule? If the Chancellor had the power to make the rule, why should it not be enforced in this case as well as in any other?

The assignment furnishes us no aid upon any of these questions, and we therefore overrule it. *Wood* v. *Frazier*, 2 Pickle, 501–503.

The case was regularly called for trial upon the docket of the Chancery Court, on May 27, 1890, "when complainant claimed that, upon the record in the case, he was entitled to a trial by jury of the issues of fact in this cause, and asked that the cause be put on the docket of causes triable by jury; and defendant denied that complainant had this right, on the ground that a demand had not been made for the jury, and entry thereof on the docket as required by law."

The question was taken under advisement by the Chancellor until May 30, 1890, when he decreed that complainant was "not entitled to have the cause tried by a jury, having failed to comply with the requirements of the statutes in that respect." The Chancellor further decreed that the

cause having been regularly reached on the docket, the defendants were entitled to have it tried at that term, and the time allowed by law to complainant for taking proof having elapsed without complainant having taken any proof, it was ordered that the cause be set for trial on July 2, 1890; that both sides have until June 21, inclusive, to take their evidence in chief, and until June 28, inclusive, to take their evidence in rebuttal; that each party should give to the solicitor of the other two days' notice of the time and place for taking testimony, and the name of witnesses, where the evidence was to be taken in Davidson County; and if any evidence was to be taken out of that county, it was to be taken on interrogatories filed with the Clerk, one day being allowed, after notice to the opposite solicitor that they are filed, for filing cross interrogatories.

The fourteenth assignment is that the Chancellor erred after continuing the case from May 30 to July 2, in ordering that all depositions of non-residents of Davidson County should be taken on interrogatories on one day's notice.

If the Chancellor was right in holding that complainant was not entitled to a trial by jury of the issues of fact, that the time allowed complainant by law for taking testimony had expired without his having taken any, and that the case had been regularly reached for trial on the call of the docket, complainant was entirely at the mercy of the Court, and the permission granted to take

testimony either in or out of Davidson County, upon interrogatories or otherwise, was an act of grace and favor to him, of which he has no just cause of complaint. We therefore overrule the fourteenth assignment.

On June 27, 1890, complainant filed a petition to rehear and rescind the decree of May 30, 1890, and moved that the case be placed on the jury docket, and for a jury to try the case, and for leave to take depositions, and for hearing of oral testimony, and to set the case for a day, and to open the case for taking proof, etc. The petition for rehearing assigns six causes or reasons why its prayer should be granted.

On June 30, 1890, the Chancellor being of opinion that complainant was not entitled to a trial of the case by jury, under the rules of the Court made April 10, 1889, and April 24, 1890, he having failed entirely to comply with either of said rules, and that he was not entitled to a jury trial under the statutes of the State applicable to trials by jury, so ordered and decreed. He dismissed the petition for rehearing, and ordered that the case stand for trial on July 2, 1890, as theretofore fixed. Complainant excepted.

On July 5, 1890, the Chancellor ordered that as the practice in regard to jury trials was in some confusion, complainant might have an extension of time for one week from that day in which to take proof; but complainant declined to take the week, as being an insufficient time within which to take proof in the case.

The tenth assignment is that "the decree of July 5, 1890, is clearly error in limiting to one week the complainant for his proof."

As stated in acting upon the fourteenth assignment, any extension of time offered to complainant for the purpose of enabling him to take his proof was a favor to him instead of a cause of complaint, provided the Chancellor was correct in other respects in said decree. We therefore overrule the tenth assignment.

On July 2, 1890, an affidavit of complainant's solicitor was filed for a continuance.

On July 11, 1890, complainant moved to be allowed to take proof, and for that purpose to remand the case to the rules, for an order allowing time, and to continue the case to the next term of the Court.

On July 18, 1890, the cause was heard by the Chancellor without a jury, and, it appearing to the Court that all the facts and equities set up in the bill are fully denied in the pleas of abatement and answers, and complainant having failed to sustain his bill by proof, the Court ordered the bill to be dismissed with costs, and declined to render judgment in favor of complainant upon the notes.

The eleventh assignment of error is that "the Chancellor erred, under all the facts set forth, in refusing, on the affidavit (record, 48, 49), to allow the case to go to rules to be prepared." This assignment does not show upon its face that, *prima facie*, the action of the Chancellor was erroneous,

nor does it state any reason why it is claimed that his action was erroneous. It is therefore overruled. *Wood* v. *Frazier,* 2 Pickle, 501–503.

On July 18, 1890, complainant filed a petition to rehear, set aside, and modify the decrees entered at that time; to have the case placed on the jury docket, and to be permitted to frame his issues for trial.

On July 21, 1890, the petition was dismissed, and on July 26, 1890, complainant appealed to this Court.

The twelfth assignment is that "the Chancellor erred in overruling the petition to rehear." This assignment is overruled for the reason given in overruling the eleventh assignment.

The thirteenth assignment is that "the Chancellor erred in not extending the time for taking proof in the cause upon the affidavit of the solicitor of complainant." This assignment is overruled for the reason given in overruling the eleventh assignment.

The seventeenth assignment is that "the Chancellor erred in not giving a judgment on the notes in favor of Cheatham." This assignment is overruled for the reason given in overruling the eleventh assignment; and, besides, notes not being due when the bill was filed, and that fact having been pleaded and relied upon in the answer filed by Pearce & Ryan, the suit could only be sustained by sustaining the attachment; and the attachment having been dismissed with the bill, no decree

could have been rendered on the notes. *Pigue* v.
*Young*, 1 Pickle, 268.

The remaining assignments of error fairly raise
the question as to whether the Chancellor erred in
refusing complainant a trial of the issue of fact
in the case by jury. It was held in *Allen* v. *Saul-
paw*, 6 Lea, 481, decided in 1880, that either party
to a suit in Chancery is, upon application, entitled
to a jury, to try and determine any material fact
in dispute; and that the demand for a jury may
be made at any time before the case is in fact
heard by the Chancellor.

In *Duncan* v. *King*, 1 Tenn., 79, it was held
that issues of fact to be tried by a jury may be
ordered at any state of a suit in equity, even
after the hearing has commenced; and in the fol-
lowing cases the order for a trial by jury was
made after the case had "come on to be heard:"
*London* v. *London*, 1 Hum., 4; *Lowe* v. *Traynor*,
6 Cold., 635; *Morris* v. *Swaney*, 7 Heis., 592;
*Mills* v. *Farris*, 12 Heis., 451; *Johnson* v. *Warden*,
1 Leg. R., 26; *Pearce* v. *Suggs & Pettit*, 1 Pickle,
728.

But in all of those cases a motion for a jury
was made in open Court by one of the parties,
or the Chancellor, of his own accord, ordered a
trial by jury for his own information.

The decision in *Allen* v. *Saulpaw* was in effect
approved ·in *Cooper & Stockell* v. *Stockard*, 16 Lea,
145, decided in 1885.

In each of those cases the decision was by a

full bench, and entirely unanimous. In each of them it was held that the Act of 1875, Chapter 4, page 6, did not apply to the trial of issues of fact in the Chancery Court. After a careful review of the reasoning of Chief Justice Deaderick, who delivered the opinion in *Cooper & Stockell* v. *Stockard*, we approve the decision made in that case.

The Act of 1875 provides "that hereafter when any civil suit is brought in any of the Courts of record in this State, whether such suit comes to such Court by summons, appeal, certiorari, or otherwise, and which is now triable by jury, either party desiring a jury shall, in case of original suits, demand a jury in his first pleading tendering an issue triable by jury, and in the case of all other suits shall demand a jury within the first three days of the trial term."

This Court having decided in 1880, and again in 1885, that the Act of 1875 did not apply to the trial of issues of fact in the Chancery Court, the Legislature passed an Act, approved April 6, 1889, enacting that the Act of 1875 "be so amended as to provide that hereafter all suits now pending in the Courts of this State, or which may hereafter be brought, either party desiring a trial by jury, shall be entitled to a jury, provided he call for the same on the first day of any term at which the suit stands for trial, and have an entry made on the trial docket that he calls for a jury."

The Act of 1889 makes no mention of Chancery

44—5 p

Courts by name; and as the Legislature knew that this Court had twice decided that the Act of 1875 did not apply to the trial of issues of fact in the Chancery Court, if the Legislature had intended that the Act of 1889 should apply to such issues, language would have been used in the Act of 1889 which would have placed the matter beyond all doubt.

That the Legislature did not intend that the Act of 1889 should apply to the trial of issues of fact in Chancery is somewhat indicated by the fact that a bill was introduced into the Legislature, which was in session when the case of *Allen* v. *Saulpaw* was being heard in this Court, the title of which bill was to be "An Act to regulate the practice in the Chancery Courts in regard to the trial of causes by jury." The bill, after passing several readings, was referred to the Judiciary Committee, but failed of final passage.

The Legislature of 1881 having failed or refused to pass a bill which expressly regulated the practice in the Chancery Courts in regard to the trial of causes by jury, we cannot assume that the Legislature intended that the Act of 1889 should affect the practice in the Chancery Courts, when no mention by name is made of those Courts in that Act.

The fact that a bill expressly regulating the practice in Chancery Courts in jury causes had been introduced into the Legislature at the session of 1881, was mentioned in the opinion of this

Court in *Allen* v. *Saulpaw*, 6 Lea, 481, 482; and the fact was thus made accessible to the Legislature of 1889.

In the case of *Stadler* v. *Hertz & Co.*, 13 Lea, 318, 319, decided in 1884, it was held that a Chancery Court, without the aid of any legislation, had the inherent power to make and enforce a rule that no jury would thereafter be allowed in that Court, unless the demand therefor should be made on or before the second day of the term, by motion on the motion docket, or at the bar of the Court; and the Legislature may have thought that it was unnecessary to make the Act of 1889 apply to Chancery Courts, inasmuch as those Courts had the inherent power, without legislative aid, to make all reasonable rules and regulations upon the subject.

We conclude upon this point that the act of 1889 does not apply to the trial of issues of fact by juries in the Chancery Court.

We are, however, of opinion that the Chancellor of the Chancery Court at Nashville had the inherent power to make all reasonable rules upon the subject to which the rules of April 10, 1889, and April 24, 1890, relate. *Stadler* v. *Hertz*, 13 Lea, 318, 319; *Denton* v. *Woods*, 2 Pickle, 37; *Wood* v. *Frazier*, 2 Pickle, 509.

The rule of April 10, 1889, requires "that applications for a jury must be made within the first three days of the trial term." We think that the rule is a reasonable one, and that the Chancellor

had the right to enforce it in this cause. *Stadler* v. *Hertz*, 13 Lea, 318, 319.

It is conceded that complainant did not comply with this rule unless he did so when he demanded a jury in the replications which he filed to the plea and answer of Pearce & Ryan, and to the plea of C. B. and C. D. Pearce.

He insists, however, that as those replications were on file before the trial term of the Chancery Court convened, and as they remained on file during and after the first three days of said term, they constituted a fair and even literal compliance with the requirement of the rule.

On the other hand, it is insisted by defendants that replications were abolished by the Code; that the replications in this case were superfluous, and, therefore, that neither the Court nor the parties could be compelled to take cognizance of them, or of any demand for a jury that might be contained in them.

Formerly in equity, if the defendant by his plea or answer offered new matter, the complainant replied specially. This *special* replication was followed by rejoinder, surrejoinder, rebutter, surrebutter, etc., as at common law.

*Special* replications fell into disuse long ago (Tyler's Mitford's Equity Pleading, p. 412), but *general* replications continued in use in this State until the passage of the statute carried into the Code of 1884, at § 5065. *Special* replications to answers were abolished in the United States Cir-

cuit Courts by Equity Rule 45, but the *general* rep-lication is still retained in those Courts. See Equity Rule 66.

In this State the *general* replication to an answer was long ago regarded as a mere formal acceptance of the issues tendered by the negative averments of the answer, and as a tender of issue upon the affirmative averments of the answer, and being merely formal, the general replication to an answer was usually, in practice, put in by the Clerk and Master. *Lea* v. *Vanbibber,* 6 Hum., 19.

Section 5065 of the Code of 1884 provides that "no replication or other pleading, *after answer filed,* is required or allowed, but all cases will be heard as if replication had been filed, unless set for hearing expressly *on bill and answer.*"

Section 5177 is as follows: "All causes are at issue, without replication filed, if the plaintiff *fail to except to the answer* of the defendant within the time prescribed by law, and shall stand for trial at the first term of the Court *after answer filed,* and at every term thereafter, if not then heard."

We think that the words which we have ital-icized show that those sections were intended to apply only to cases *where answers are filed;* that their only object was to abolish replications to *an-swers,* and that they were not intended to abolish replications to *pleas,* especially when the pleas aver new matter.

Section 5136 provides that if the plaintiff (in equity) "thinks the plea good, but not true, he

·may *take issue* upon it and proceed to trial;" and the only known mode of taking an issue of fact upon a plea in equity is by replication. 2 Daniel's Chancery Pleading and Practice (3d Am. Ed.), p. 827; Tyler's Mitford's Equity Pleading, p. 390.

In the system of common law pleading, wherever a traverse or denial of fact took place (if it did not involve new matter), it was necessary to tender issue upon the fact denied. Stephens on Pleading (Heard's Ed.), p. 229. And the issue, if well tendered, had to be accepted by a similitér. If the plaintiff did not think that the issue was well tendered, he demurred to the traverse. The similiter therefore served to indicate that the plaintiff accepted the issue as being well tendered. Stephens on Pleading (Heard's Ed.), pp. 236, 237.

The replication to a negative plea in equity was, necessarily, in substance the same as a similiter to a plea of common traverse at common law— *i. e.*, it served to indicate the complainant's acceptance of the issue tendered by the negative plea.

In *Klepper* v. *Powell*, 6 Heis., 506, 507, the bill, in effect, charged that the defendant was a nonresident; the plea averred that he was not a nonresident. It was said by the Court "that the plea traverses distinctly, and *tenders a denial* of complainant's bill on this subject, and puts him to the proof of his allegations so made." The Court held that the Chancellor in that case erred in holding that the matter of said plea was bad, and that "he should have required the complainant *to take*

*issue on the plea.*" The case was accordingly " remanded *for an issue on the plea* as tendered." Page 508.

In *Trabue* v. *Higden*, 4 Cold., 622, an attachment at law was sued out upon the ground that the defendant was about to remove his property from the State, and about to fraudulently dispose of his property. The defendant plead in abatement denying the truth of the affidavit, and the authority of the clerk to issue the attachment. The plaintiff moved to strike out the plea, which the Court below refused to do, and then proceeded to try the case without any issue except such as was presented by the affidavit and the plea denying the truth of it.

This Court held that the verdict without an issue was a nullity, and that after the Circuit Court refused to strike out the plea it was then the duty of the plaintiffs *to reply to the plea either by a direct traverse* or by matter in avoidance. Pages 625, 626.

It is true that the last case was at law, but the Circuit Court in that case was proceeding under its statutory attachment jurisdiction just as the Chancery Court was doing in this case.

We regard the two cases last cited as holding that in attachment cases, whether the proceeding is at law or in equity, if the ground of the attachment is denied by a negative plea, the plaintiff has the right, though it may not be his duty, to signify his acceptance of the issue tendered by the

plea; and that this acceptance may be signified at law by a similiter, and in equity by a replication in the nature of a similiter, which is the only replication of which a negative plea is susceptible.

We regard the replications filed in this cause as in substance a similiter; and therefore, as this is an attachment case, we regard them as properly filed.

It is proper, however, to say that in the system of common law pleading now in use in this State, the similiter has been rejected as an idle form; the affirmation of a fact by one party and its denial by the other being regarded as forming an issue. History Lawsuit, Sec. 234.

But assuming that the replications were properly filed, the question remains whether a demand for a jury contained in a replication is a sufficient demand according to the rules of chancery practice.

Having held that the Acts of 1875 and 1889 do not apply to the trial of issues of fact by juries in the Chancery Court, we must be controlled by the practice of that Court as it obtains independent of statute. We believe no case can be found in our reports where the Chancellor has ever ordered a jury trial at the application of one of the parties, unless the application was made to the Chancellor by motion in open Court; and a demand for a jury in a replication or other pleading is not a compliance with the practice.

It is true that complainant did apply to the Chancellor in open Court for a jury, but unfortu-

Cheatham *v.* Pearce & Ryan.

nately the application was not made "within the first three days of the trial term," as required by the rule of April 10, 1889, and therefore was made too late.

We therefore affirm the decree of the Chancellor.

Complainant will pay the costs of this Court and of the Court below.