# MADISON LAND & LOAN CO. v. F. H. HAMMOND et al.

Western Section.   September, 1926.

Certiorari denied by Supreme Court March 29, 1926.

**1. Appeal and error.  Assignment of error must be specific.**

An assignment of error that the court erred in overruling and disallowing complainants motion for a new trial is too general and will not be considered by the appellate court.

**2. Trial.  Time when issues shall be made up and submitted to the jury lies in the discretion of the chancellor.**

Since the statute is silent as to the time when issues shall be formulated or submitted, such action is left to the sound discretion of the chancellor.

**3. Trial.  It is not erroneous to submit issues to the jury after the evidence has been submitted.**

In an action where the court suggested that the evidence should be submitted to the jury after the issues were made up and the case was so tried, held there was no error in the court not submitting the issues to the jury until after the evidence had been submitted.

**4. Trial.  In a chancery court where issues are submitted to the jury, the issues submitted should cover the controlling questions of fact.**

Issues submitted to a jury in the chancery court should be such as go severally to the decision of the entire case, or some distinct branch thereof upon its merits, and should have those controlling questions of fact whose decision will determine the real merits of the controversy and should not include those of an immaterial, collateral or inconclusive notice.

**5. Trial.  Issues to be submitted to the jury in chancery court should be made up by the parties under the direction of the court.**

The chancellor is required to see that proper and material issues are submitted and such as are determinative of the questions involved and he may not arbitrarily form these issues without regard to the pleadings, but the parties cannot restrain him from shaping them so that in his sound judgment they properly present the case.

**6. Pleading.  Allowing amendment to pleading lies within the discretion of trial judge.**

It is well established that the allowing of amendment to pleadings is largely within the discretion of the trial judge and after the trial of a cause is commenced if the court below refuses to allow new pleas to be filed the appellate court will not, except in very extraordinary cases, interefer with the discretion of the trial court.

**7. Trial.  Instructions.  Instructions are limited by pleading.**

The instruction cannot be broader than the pleading and the court has no right to specify instruction pertaining to any matter or any thing not presented by the pleading.

**8. Trial.  Instructions.  Instructions on liability of endorser held good.**

An instruction which told the jury that the burden of proof was on complainant to show by the preponderance of evidence that the defendant made the alleged agreement in regard to the endorsement held good.

**9. Contracts. Evidence. Evidence held not' to support contract alleged.**
In an action to hold defendant primarily and unconditionally liable for the payment of a certain note without regard to a deed of trust, held that under the evidence, the defendant was liable to pay only the balance due, if any, after the sale of the land under the deed of trust.

Appeal from Chancery Court, Madison County; Hon. Thos. C. Rye, Chancellor.

Affirmed.

Anderson, Rothrock & Carroll, of Jackson, for appellant.

Lamor Heiskell, of Memphis, and Pearson & Hewgley, of Jackson, for appellee.

OWEN, J. The complainant has appealed from a decree of the chancery court rendered against it in Madison county, wherein complainant was denied any recovery against Phil M. Warren and James W. Warren.

The complainant is a corporation and engaged in buying, selling and trading in lands.

On May 1, 1922, complainant entered into a contract with defendants Phil M. and James W. Warren, whereby it agreed to exchange two tracts of land owned by complainant. Both of said tracts were situated in Madison County, Tennessee, one tract of 400 acres, about four or five miles east of Jackson, and known as the 'Leeper tract.' The other tract was four or five miles south of Jackson and consisted of 250 acres, and known as the 'Hammond tract.'

The defendants owned a tract of more than a thousand acres in the state of Alabama. On this thousand acres of land there was a mortgage of $36,000 owing by defendants. Defendants agreed to convey said Alabama lands and also certain personal property, consisting of Jersey cattle, farming implements, etc. Complainant assumed the mortgage, which was not due for some time on the Alabama land.

The contract provided that the complainant was to convey said Madison County lands to the defendants or their assigns. Complainant was to receive $36,000 for its land in Madison county in addition to the Alabama lands. The complainant made a deed to the defendants to the 'Leeper tract' and the defendants gave a mortgage on the 'Leeper tract' for $5,000 and left $31,000 that was to be paid to complainant. It appears that complainant owed H. D. and H. J. Hammond twelve thousand ($12,000) dollars as purchase money on the Hammond tract. Before deeds passed as to the Hammond tract the defendants assigned their interest in the Hammond tract to one Sam E. Dunn. Sam E. Dunn was to take a deed to the Hammond

tract and assume the obligation of thirty-one thousand ($31,000) dollars.

Complainant and the Hammonds objected to this and there were some negotiations. The complainant was represented by two of its officers, Mr. Connie Wilkerson, Vice-President, and Mr. C. A. Ross, Secretary. The Warrens were represented by a real estate agent by the name of Dean Adams, located in Memphis, and a Mr. W. E. Stainback, associated with Mr. Adams and who really made the trade for the Warrens with the complainant. Out of the final negotiations a deed from complainant to Dunn was executed and Dunn executed two mortgages, one to secure the Hammonds for twelve thousand ($12,000) dollars and one to secure the complainant, for nineteen thousand ($19,000) dollars.

The Warrens endorsed the twelve thousand ($12,000) dollar note, and this note was secured by first mortgage on the Hammond tract of 250 acres. The second mortgage given by Dunn was for $19,000. The Warrens did not endorse the notes which represented the indebtedness of $19,000.

The insistence of complainant is that the Warrens should be primarily liable on the $12,000 indebtedness due to the Hammonds, and that the Hammond tract of land should be subject first to the payment of the $19,000.

We quote from complainant's bill as follows:

"That said Warrens were to be primarily and unconditionally bound for the payment of said $12,000 to said Hammond, independent of the mortgage executed to secure Hammond in that amount and that they would satisfy and have fully discharged said mortgage when the debt thereby secured became due, and that they would not allow or suffer same to be foreclosed, and the execution of said first mortgage by said Dunn to secure Hammond would not prejudice the rights of complainant and that as between them and complainant the whole of said land was to stand primarily as security for the payment of the $19,000 payable to complainant.

"That said transfers were made in pursuance to said agreement; said Dunn taking a deed to said Hammond tract and executing notes for $12,000 to defendants Hammond, secured by first mortgage on said land, and endorsed by defendants, Phil M. and James W. Warren, and complainant, and giving complainant his unendorsed note for $19,000 secured by second mortgage on said lands; that said Dunn and defendants Warren have failed to pay the annual interest payments on said notes, etc.; that said land, if said Hammonds are allowed to foreclose said mortgage said land will not bring a sufficient amount to satisfy said Hammond debt and that of complainant.

"Said bill alleges Dunn is insolvent and a nonresident and asks for an attachment against his interest in said land, appointment of a receiver and an adjudication of the rights and status of the parties."

Dunn and his wife were made party defendants. The trustees in the two deeds of trust executed by Dunn, and also the Hammonds, were party defendants. No answers were filed except by the Warrens, pro confesso being taken as to all the other defendants.

"The defendants, Phil M. and James W. Warren, answered said bill admitting the execution of the written contract for the exchange of said lands and that the terms of same were substantially as set out in section 1 of said bill; they admit that after the execution of said contract they contracted with Sam E. Dunn to purchase said Hammond tract and instructed complainant to execute a deed to him, claiming a right to do so under the terms of said contract; they admit they agreed to endorse said Dunn's note for $12,000, said notes to be secured by a first mortgage but denied that they assumed or unconditionally bound themselves for the payment of said notes; they denied that they agreed to be "primarily and unconditionally bound. for payment of said Dunn notes independent of said first mortgage or that they agreed to satisfy, pay off or discharge said mortgage when said debt matured or that the execution of said first mortgage would not prejudice the rights of complainant," but state, to the contrary, that they would not have endorsed said notes under any such agreement.

"The defendants contend in their answer that all of the agreements between said parties were embodied in the original written contract and that the only change or amendment made in same was by telegrams over the signatures of the parties, or their agents, said amendment being as follows:

" 'On August 2, 1922, complainant wired Dean Adams, real estate agent acting for defendants in the negotiations, as follows:

" 'You are authorized to close the deal provided Warrens indorse first $12,000 of Dunn's paper.' "

"Mr. Adams reply to said telegram being as follows:

" ':Warrens accept your proposition for him to endorse first twelve thousand of Dunn's paper. Will forward note and trust deed upon receipt of deed.' "

"Said Warrens before endorsing said Dunn notes made inquiry and satisfied themselves that said lands were worth the amount of said encumbrance before agreeing to said change in the contract."

The complainant demanded a jury on the day of trial.

"After a jury was selected, counsel for complainant and defendants tendered issued to be submitted to the jury. The court suggested that the evidence be proceeded with and issues submitted later. Both parties preferred to formulate issues, but neither made or preserved any formal exception to the action of the court in delaying the forming of issues until after the proof was taken.

"At the conclusion of all the evidence complainant moved the court to be allowed to amend its bill so to charge that it was induced to convey the Hammond tract of land to Sam E. Dunn by the belief and understanding that defendants Warren were securing and guaranteeing payment of said Dunn notes to Hammond, aggregating $12,000 and that they were obligating themselves to pay said notes and leave said Hammond tract free and unencumbered to secure complainant's second mortgage for $19,000; that it was misled, injured and defrauded by the fraud and inequitable conduct of defendants Warren, and they are estopped to deny that they endorsed said Hammond notes with the understanding that they would pay same and protect complainant against the foreclosure of the trust deed securing same; that at the time said original contract was executed and afterwards there was a fraudulent scheme and purpose on part of defendants not to pay the $36,000 mentioned in said contract, and that they had no intention to pay any part of same except the $5,000 paid on the Leeper tract.

"Said motion was overruled by the court."

It appears that various issues were submitted by both complainant and defendants, the complainant submitting two issues and the defendant submitting four issues. These were refused and the court submitted the following issues:

"Did the defendants Phil M. and James W. Warren agree to be primarily and unconditionally bound for the payment of the Hammond notes aggregating $12,000 independent of the mortgage executed to secure Hammonds in that amount and to satisfy and have fully discharged said mortgage when the debt thereby secured became due, and that they would not allow nor suffer same to be foreclosed and that the execution of said mortgage by Dunn to secure Hammonds for said notes would not prejudice the rights of the complainants, Madison Land & Loan Company, and that as between the said defendants, Warrens and the complainant Madison Land & Loan Company the whole of said land was to stand primarily as security for the payment of note of $19,000 executed by Dunn and payable to the complainant."

The defendants moved for a directed verdict at the conclusion of all the evidence, which motion was overruled; thereupon the court charged the jury, which after receiving the charge of the court answered the issue submitted "No."

The complainant moved the court for a judgment against the Warrens notwithstanding verdict of the jury. This was overruled. Complainant also seasonably entered motion for new trial. This was overruled and disallowed.

The court proceeded to decree that the defendants Warren are not primarily bound for the payment of the Hammond notes inde-

pendent of the mortgage executed to secure the said notes, and that they did not agree to become so liable or to satisfy or to have fully discharged the said mortgage, and that they are only liable on said notes as endorsers in blank, and that they did not agree to or assume any further or additional liability than that implied by law from their said endorsement, and that as such endorsers they are entitled to the benefits of the mortgage in the event said mortgage is foreclosed.

The complainant excepted to the decree of the Chancellor, prayed and was granted appeal to this court, perfected the same and had a proper bill of exceptions signed and filed.

This lawsuit was instituted under and pursuant to the Declaratory Judgment Act of 1923, asking the court to declare and fix the rights, status and legal relations of the complainant and defendants. The complainant has assigned 11 errors in this court.

By the first it is insisted that the court was in error in not submitting an issue or issues at the beginning of the trial, and that the jury was unable to know what issue or what facts it would be called upon to decide. The second error assigned is that the court erred in presenting the issue that was presented because said issue of fact is not conclusive of the controversy in the cause and does not constitute a determinative issue. The third error relates the courts refusal to allow complainant to amend its bill. The fourth and fifth errors assigned relate to certain special requests offered at the conclusion of the general charge, which were refused.

Request No. 1, which is the fourth error, is as follows:

I charge you that if you should find from a preponderance of the evidence that the complainant Madison Land & Loan Company, thought that the defendants Warren had agreed to guarantee the payment of the $12,000 to Hammond and to leave the Hammond tract of land primarily bound for the $19,000 due from Dunn to complainant and that this thought or understanding was caused by words, acts, conduct or silence of the defendants Warren and was the reasonable inference to be drawn from the words, acts, conduct or silence of said defendants, and if you further find by a preponderance of the evidence that the defendants knew that the complainant understood the agreement to be as stated, and that defendants kept silent and allowed complainants to act under such circumstances, knowing that the complainant would not so act if it did not think the agreement to be as shown above, then I charge you, that the defendants Warren are estopped to deny that agreement was as contended by complainant.

In Special Request No. 2 the basis of the fifth assignment is as follows:

I charge you that if the defendant Phil M. Warren acting
for himself and his brother, the defendant James W. Warren,
understood the proposition made by Mr. Wilkerson for the com-
plainant to be that said Warrens were to guarantee the pay-
ment by Dunn of the Hammond notes, aggregating $12,000 and
to release said land from the first mortgage so that it might
stand primarily bound for the payment of complainant's debt
secured by a second deed of trust on said land and by their con-
duct led the complainant to believe that they so understood and
complainant acted upon its belief in conveying said Hammond
tract to Dunn and accepting his note for $19,000 secured by said
second deed of trust, then I charge you that the said defendants
Warren would be estopped to deny that such was the effect of
their endorsement of said Hammond notes.

The sixth error complains of the court granting a special request,
offered, we presume, by the defendants. The exception complained
of is as follows:

I am asked to charge you that in this suit the complainant is
suing upon an alleged parole agreement of the defendants P.
M. Warren and J. W. Warren whereby they assume liability in
addition to that brought about by the endorsement of the
$12,000 note. The presumption of law in the absence of evidence
to the contrary is that by endorsing in blank the parties assume
no other liabilities than those implied by law from the fact of
placing their names upon the paper, and to vary and enlarge
the agreement made at the time of the endorsement the proof
must be full and satisfactory and unless the complainant has
shown by full and satisfactory proof the alleged agreement was
made by said defendants then and in that event you would
answer the issue of fact in the negative.

The seventh error is the charge of the court as a whole is mislead-
ing and prejudicial to the rights of the complainant. This assign-
ment is overruled and disallowed because it is too general. The
eighth assignment is the court erred in overruling and disallowing
complainant's motion for a new trial. This assignment is overruled
and disallowed for the same reason applicable to the seventh assign-
ment. The ninth assignment complains of the court overruling com-
plainant's motion for a judgment notwithstanding the judgment of
the jury. The tenth and eleventh assignments both complain of the
court decreeing in favor of the defendants Warren, and in holding
and adjudging against the complainants insistencies.

As to the first assignment of error the complainant through its
counsel acquiesced in the method of procedure followed by the court,
putting on its proof and at the conclusion of all the evidence com-
plainant again tendered issues to be submitted to the jury.

"The statutory provision in regard to issues in a chancery jury trial is, as follows:

>Shannon's Code, section 6285: The issues shall be made by the parties under the direction of the court and set forth briefly and clearly the true question to be tried.

The act is therefore silent as to the time when issues shall be formulated or submitted and such action is left in the sound discretion of the Chancellor.

The Supreme Court said in the case of Duncan v. King, 1 Overton, 79:

"Issues of fact are not necessarily incident to the progress of a suit in equity. The act is silent as to the time within which they shall be agreed upon or ordered by the judge after replication. It, therefore, seems proper that they may be agreed on or ordered at any stage of the case after replication previous to argument in court."

The foregoing decision was approved by the court in the case of Cheatham v. Pierce, 89 Tenn., 688, wherein the court said:

"In Duncan v. King, 1 Tenn., 79, it was held that issues of fact to be tried by a jury may be ordered at any stage of a suit in equity even after the hearing has commenced."

"The entire proceeding in-so-far as issues are concerned is controlled and governed by the discretion of the Chancellor, except he must see to it that the issues finally submitted are determinative of the rights of the parties. Under such practice, it being the duty of the court to mold and shape the issues to the end that when answered they will be determinative. Had the parties agreed on the issues before submitting proof in the case, and the court should reach its conclusion, after hearing proof that the issues agreed upon were not the proper issues to be submitted would have the right to re-shape the issues so as to have them determinative of the lawsuit.

We are of the opinion that the complainant was not prejudiced by the issue being submitted at the time it was submitted, and we are of the opinion that the issue that was submitted and which was answered in the negative by the jury determined this lawsuit.

"Issues submitted to a jury in the chancery court should be such as go severally to the decision of the entire case, or some distinct branch thereof upon its merits, and should have those controlling questions of fact whose decision will determine the real merits of the controversy and should not include those of an immaterial, collateral or inconclusive notice." McElya v. Hill, 21 Pickle, 319.

The inquiry in the present lawsuit is whether or not the defendants Warren made any such agreement as was insisted and alleged by the complainant. They deny making such an agreement. We have carefully read the testimony offered by complainant and defendants on this issue, which is the real issue and the real controversy

between these parties. There was a conflict in the evidence, but there is evidence to sustain the finding of the jury, and the jury had material evidence upon which to base its verdict.

Our Supreme Court has laid down the true rule governing the submission of an issue in connection with the statute, which provides that the issue shall be made up by the parties under the direction of the court, and in Barton v. Farmers Association, 104 Tenn., 414, it was held that "a proper construction of this statute requires the chancellor to see that proper and material issues are submitted and such as are determinative of the question involved and while on the one hand the chancellor may not arbitrarily form these issues without regard to the pleadings, he may at the same time, and it is his duty, to so mold them after they are submitted by the parties as to react the merits of the controversy. Upon the one hand parties cannot require him to undertake the task of framing issues; upon the other, they may not restrain him from so shaping them as in his sound judgment may be necessary to test the material and determinative questions of fact in the case," and we are of the opinion that there is no error in the issue submitted, and in the manner in which it was submitted, and at the time it was submitted. So assignments one and two are overruled.

As to the third assignment, which complains of the court not permitting the bill to be amended, we are of the opinion that this amendment was properly disallowed. The complainant sought and endeavored by this amendment to introduce a new cause of action, changing from a submitted basis upon oral promise or agreement, alleged to have been thoroughly understood, to an allegation of fraud committed by one of the parties. But should this amendment have been allowed it would not have changed this lawsuit. There is no evidence of fraud in the record. An allegation without proof is worthless. There being no evidence to support such an amendment and the amendment coming after all the evidence had been offered, the Chancellor ruled properly in declining to allow said amendment.

"The matter of allowing amendments to pleadings is largely within the discretion of the trial judge. The statutory provision reads as follows:

" 'But the court may, at any stage of the cause, even after argument, if it be thought necessary to justice, permit amendments to the bill, upon such terms as may appear reasonable.' Shannon's Code, section 6145.

"The wording of the statute indicates and the Supreme Court has repeatedly held that allowing amendments is a matter left to the discretion of the court.

" 'Matters of amendment are generally in the discretion of the trial judge and their actions with respect thereto will seldom be reviewed by Appellate Courts.' 3 Higgins, 143.

"In the case of Smith v. Marks, 48 Tenn., 5, the court permitted changing the form of action after the trial had been completed. The Supreme Court reversed the case saying:

" 'The language (of the statute) strongly implies that the change of the form of action will only be allowed before trial is commenced; and such, we think, is a reasonable and proper construction of our statute of amendments.'

"Again, the court says in Park v. Thomas, 51 Tenn., 424:

" 'It is too well established now to be departed from that after the trial of the cause has commenced if the court below refuses to allow new pleas to be filed, the court will not, except in very extraordinary cases, interfere with the discretion of the court below:'

"In the case of Dociery v. Mills, 28 Tenn., 733-4, the court said:

" 'We know of no case in which the court has reversed the judgment of the circuit court for refusing to give a party leave to amend his plea or declaration.' "

The next two assignments complain of the court not granting certain special requests. These two requests were properly refused for the reason complainant's right to recover was limited to the allegations of the original bill, and there is nothing in the original bill that would warrant the court charging the two special requests. The court has no right to specify instructions pertaining to any matter or anything not presented by the pleadings. Payne v. R. R., 106 Tenn., 167; Fletcher v. R. R., 102 Tenn., 1.

It results that the fourth and fifth assignments of error are overruled. We are of the opinion that the court was not in error in charging as complained of in the sixth assignment. It appears that the language used in this instruction was taken from the Newell v. Williams, 37 Tenn., 209, which language is as follows:

"The presumption of law, is in the absence of evidence to the contrary, that by an endorsement in blank the party intends to assume no other or different liability than that created or implied by law, from the fact of placing his name upon the paper, and where it is sought to vary and enlarge said liability on ground of a verbal agreement to that effect, made at the time of endorsement the proof must be full and satisfactory."

The court had charged the jury that the burden of proof was on complainant to show by preponderance of proof that the defendants made the alleged agreement with reference to the twelve thousand ($12,000) note. The jury was only concerned with the alleged oral agreement which sought to enlarge the liability of the defendants. The court instructed the jury that unless such agreement was es-

tablished the issue should be answered in the negative, and we are of the opinion that there is no error in so charging the jury.

As to the ninth, tenth and eleventh assignments of error we are of the opinion that the court could not have decreed otherwise on the facts as established in this record. It appears in the decree that if the first trust deed securing the twelve thousand ($12,000) dollars had to be foreclosed and the sale of the land would not bring the $12,000 after deducting costs necessary to foreclosing the same, the defendants would be liable for any deficit up to the $12,000 and the interest thereon, and the Chancellor so held and properly so. They are not liable for any of the $19,000 evidenced by the second mortgage, and the Chancellor so held.

This case was ably argued at the bar. We have been furnished with splendid briefs, many authorities have been cited, but after due consideration we are of the opinion that there is no error in the decree of the chancellor, and the decree of the lower court is in all things affirmed.

All the assignments of error are overruled and disallowed.

The defendants will recover of complainant and its surety on appeal bond all the costs of the cause, including cost of appeal, for which execution will issue.

Heiskell and Senter, JJ., concur.